# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | | |
|---|---|---|
| United States of America<br>v.<br>Yolanda G. Welch<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No. **13-2044 TJS** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 2010 - February 2013__ in the county of _____ in the _____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1349 | Conspiracy to Commit Bank Fraud |
| 18 USC § 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

See affidavit which is attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Keller, U.S.S.S.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 28, 2013

_____
*Judge's signature*

City and state: Baltimore, MD

Timothy J. Sullivan, U.S. Magistrate Judge
*Printed name and title*



## AFFIDAVIT IN SUPPORT COMPLAINT

I, Special Agent Michael Keller, being first duly sworn, hereby depose and state as follows:

## PURPOSE OF THE AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for YOLANDA GAIL **WELCH** ("WELCH"), date of birth \*\*/\*\*/1974, for violations of Title 18, United States Code, § 1349 (Conspiracy to Commit Bank Fraud); and Title 18, United States Code, § 1028A (Aggravated Identity Theft).

## AGENT BACKGROUND

2. Your affiant is a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, your affiant is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

3. Your affiant has been a Special Agent with the United States Secret Service since October 2010. Your affiant is a graduate of the Federal Law Enforcement Training Center Basic Criminal Investigator Training Program and the United States Secret Service Special Agent Training Course. Your affiant is currently assigned to the Criminal Squad of the Baltimore Field Office and has completed numerous financial crime investigations to include counterfeit, bank and wire fraud, and Treasury Check cases. Your affiant has conducted physical surveillances, supervised or participated in undercover transactions, executed search warrants, debriefed cooperating defendants and confidential informants, reviewed computer and bank records, and secured other relevant information using other investigative techniques. Your affiant has also completed the Basic Investigation of Computers and Electronic Crimes Program (BICEP),

understanding the fundamentals of computer hardware, operating systems, computer networks, hacking and malware, information security, and the processing of electronic evidence. Prior to your affiant's employment with the United States Secret Service, your affiant spent eight years in the United States Marine Corps as an Infantry and Artillery Officer.

4. The statements in this affidavit are based in part on information provided by other law enforcement officers and witnesses, and on my experience and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that violations of Title 18, United States Code, § 1349 (Conspiracy to Commit Bank Fraud); and Title 18, United States Code, § 1028A (Aggravated Identity Theft) have occurred.

## PROBABLE CAUSE

5. This statement of probable cause is based on an investigation into fraudulent activity that has been ongoing since approximately January 2010. Pursuant to your affiant's investigation, your affiant has developed evidence that **WELCH,** and others known and unknown (hereinafter "the Subjects") have committed and continue to commit offenses in violation of Title 18, United States Code, Sections 1349 and 1028A.

6. Your affiant's investigation originated in December 2012, with a call to the U.S. Secret Service by John T. Morris ("Morris"), the manager of Macy's Special Investigations Unit. Morris has informed your affiant that since January 2010, numerous Macy's customers with credit accounts have had their accounts used fraudulently. According to Morris, he has contacted many of the victims and learned of numerous similarities in the fraud that link the fraudulent activity, indicating a common scheme:

      a.     The victims have contacted Macy's after learning that their Macy's account was used over the course of a few days to make thousands of dollars of purchases that were not authorized by the victims.

      b.     Macy's investigators learned that in most cases, a subject placed a telephone call from an unknown location to a Macy's retail store and posed as the true victim, providing the name and social security number of the Macy's account holder.

      c.     During the telephone calls the subjects made purchases using the customer's credit account.

      d.     The purchases were frequently of expensive items such as jewelry, electronics, cosmetics and clothing. During the transactions, the subjects instructed Macy's to ship the merchandise via next-day delivery.

      e.     **The purchases were all shipped to addresses in Philadelphia, Pennsylvania.**

      f.     Morris was able to track the activity relating to many of these items, and noticed that many were subsequently returned to various Macy's locations in Pennsylvania, New Jersey, Delaware, and Maryland.

      g.     The merchandise was often returned for a credit on a Macy's gift card. To date, approximately 100 Macy's customers have been the victim of identity theft through the account takeovers, and Macy's has suffered a loss of over $750,000 from fraudulently ordered merchandise.

      h.     Morris also informed your affiant that of the approximately 100 victims he has identified that are related to this scheme, 80% live in the Baltimore-Washington area, and the remainder live in Philadelphia or New Jersey.

7.     According to Morris, when an individual calls a Macy's retail store to place an order, the individual must provide the sales clerk only with a name, address, and social security number in order to authorize the purchase.

**The Source of the Personal Identifying Information: Michelle & Chanell Cole**

8.     Investigators from the U.S.S.S. initially contacted 27 of the victims, and learned that all 27 of them were patients at one of three particular medical offices at some point during the past couple years. Your affiant subsequently learned that 60 of the 100 victims were patients

or employees at one of four medical providers, which have connections to subjects Michelle Cole and Chanell Cole. Those four medical providers are:

    a.    Lynn Billingsley, M.D. (at Good Samaritan Hospital) (8 victims);
    b.    MedStar Health Inc. hospitals (12 victims).
    c.    Padder Health Services, LLC in Laurel, Maryland (7 victims); and
    d.    BW Arthritis and Rheumatology in Glen Burnie, Maryland (33 victims);

9. Dr. Billingsley was interviewed and confirmed that Chanell Cole was employed by Dr. Billingsley from August 2008 to May 2010, and that during that time, Chanell Cole had unfettered access to patients' personal identifying information ("P.I.I."). Chanell Cole was fired from Dr. Billingsley's office in 2010 when it was learned that she wrote fraudulent prescriptions using the doctor's prescription number without authority.

10. Dr. Billingsley also informed investigators that while Channell Cole worked for her, Chanell Cole also had computer access to a MedStar Health, Inc. database that contained the P.I.I. of all MedStar Health, Inc.'s patients.

11. Records from Padder Health Services, LLC confirmed that Michelle Cole was employed by the practice in Laurel, Maryland from approximately June 2010 through February 2012 and that Michelle Cole had access to practice's database which contained the P.I.I. of thousands of patients in multiple states. Michelle Cole was fired from Padder Health Services in February 2012 when it was learned that she wrote fraudulent prescriptions using a doctor's prescription pad without authority.

12. Your affiant has also spoken with Dr. Dalal of BW Arthritis and Rheumatology and confirmed that Michelle Cole was employed by BW Arthritis and Rheumatology from February 2012 through February 2013, and that Michelle Cole had access to patients' P.I.I.

13. Based on my investigation, including discussions with Dr. Billingsley, interviews of relatives of the subjects, Michelle Cole and Chanell Cole are sisters.

4

### The Philadelphia Conspirators: Denise Wearing & WELCH

14. The investigation has developed at least four civilian witnesses, who are both known to law enforcement, and whose identities should be protected for both their safety, and because disclosure of their identities at this time could jeopardize the ongoing investigation. The witnesses will be referred to as Witness #1, Witness #2, Witness #3, and Witness #4.

15. Witness #1, Witness #2 and Witness #3 have informed investigators of the following:

    a. Denise Wearing ("Wearing") resides in Philadelphia, PA, and has obtained P.I.I. from Michelle Cole and Chanell Cole;

    b. Wearing's personal mobile phone numbers are 215-779-3898 (Witness #1 and Witness #2), and 215-970-8203 (Witness #2);[1]

    c. Wearing and Chanell Cole met while the two were incarcerated in the Maryland Department of Corrections at the same time. Following their release from prison, Wearing and Chanell Cole remained friends, and Wearing became friendly with many of Chanell Cole's relatives, including Michelle Cole;[2]

    d. One or more of the conspirators used the stolen P.I.I. to determine if the victims had existing Macy's accounts, and then made fraudulent purchases on those accounts;

    e. The conspirators used the victims' Macy's accounts to pay for the purchases to be shipped to various locations in Philadelphia, PA;

    f. Wearing arranged for the delivery of the merchandise to various people in Philadelphia in exchange for a fee;

    g. After obtaining the merchandise, Wearing provided the merchandise to **WELCH**, who also lives in Philadelphia. **WELCH** either sells the merchandise or returns it to various Macy's locations and receives gift cards in exchange. **WELCH** pays a percentage of the profits to Wearing.

16. A review of the Macy's records relating to this fraud scheme reveal that from May 8, 2012 through October 10, 2012, ten fraudulent transactions resulted in approximately

---

[1] This information has been corroborated through numerous interviews and various phone records.
[2] This information has been corroborated through numerous interviews and the records of the Maryland Division of Corrections,

5

$54,764.00 in merchandise been shipped to Wearing's residence at 7250 Calvert Street in Philadelphia, Pennsylvania.

17. Numerous other addresses received shipments of merchandise purchased fraudulently in this scheme that are connected to Wearing, including:

    a. From December 2011 through December 2012, 14 fraudulent transactions resulted in over $33,000 in merchandise being shipped to Wearing's former residence at 1143 South 61st Street in Philadelphia, Pennsylvania.

    b. 18 deliveries totaling $39,904.00 in merchandise were shipped to 4912 N. Marvine Street, Philadelphia, Pennsylvania. According investigator's interview of Wearing, relatives of Wearing live at that address.

    c. 8 deliveries totaling $16,822.00 in merchandise were shipped to 27 West Rockland Street, the residence of Wearing's sister, according to Wearing and law enforcement databases.

18. Witness #3 and Witness #4 have both informed investigators of the following relating to **WELCH**:

    **a.** That Wearing provides merchandise to **WELCH** (Witness #3), who is aware that the merchandise is obtained through the fraudulent use of unknowing victim's Macy's credit accounts (Witness #3 and Witness #4);

    **b.** That **WELCH** sells the merchandise for approximately 50% of the retail price;

    **c.** That the merchandise that **WELCH** sells often has Macy's receipts in the names of various victims.

19. Macy's investigator John Morris also indicated to your affiant that some of the merchandise connected to **WELCH** (see below), was returned using the receipt containing the name of the victim.

20. On August 14, 2012, a subject posed as MV and placed a call to 4 Macy's stores (in Virginia, Maryland, and Minneapolis). MV was a patient of Dr. Dalal. The caller purchased approximately $17,932.81 of merchandise, and instructed that the purchase be made on MV's

6

Macy's credit account, and further instructed that the items be shipped to 6018 Ogontz Ave[3] and 2619 S. Fairhill Street in Philadelphia. On September 22, 2012, some of these items were returned for gift cards at a Macy's in Las Vegas by "Yolanda Haynes." On September 30, 2012, the gift cards were used to purchase two pieces of furniture from Macy's #155 in Philadelphia, and were shipped and delivered to Yolanda **WELCH**, at 1146 S. Carlisle Street, Philadelphia, Pa, 19146, 215-546-2551.

21. According to Pennsylvania's Department of Motor Vehicles, **WELCH**'s home address is 1146 S. Carlisle Street, Philadelphia, Pa, 19146. According to **WELCH**'s criminal history report, **WELCH** is also known as Yolanda Haynes.

22. On February 28, 2013, **WELCH** was arrested at the Knit Wit Store in Philadelphia, Pennsylvania, after attempting to make a purchase using a Knit Wit Store gift card which was determined to have been obtained by fraud. **WELCH** was searched incident to arrest and found to be in possession of two items of Macy's jewelry: a Macy's jewelry box containing a diamond bracelet and a Gucci box containing a Gucci watch, both later determined to be purchased fraudulently using the Macy's account of MV.

23. On February 28, 2013, James Cole, III (not related to Michelle or Chanell Cole) was observed by store employees as accompanying **WELCH**, and was subsequently identified by **WELCH** as her boyfriend. James Cole, III was interviewed by detectives of the Philadelphia Police department. During the interview, James Cole, III stated that he owned a pawn shop in Philadelphia, that he sells gift cards at his pawn shop, and that he obtains the gift cards from purchasing them from customers of his business.

---

[3] From May 17, 2012 through February 14, 2013, 35 fraudulent transactions (approximately $117,000) resulted in merchandise being shipped to 6018 Ogontz Avenue Philadelphia, PA 19141.

Case 1:13-mj-02044-TJS   Document 1   Filed 08/28/13   Page 9 of 10

13-2044TJS

24. Philadelphia detectives obtained a search and seizure warrant for the vehicle that **WELCH** and James Cole, III were driving. Two Macy's receipts were seized from the vehicle, and both relate to fraudulent transactions using Macy's customers' credit accounts without their authority. One was a receipt for the purchase of Coach merchandise from a Pittsburgh Macy's on February 10, 2013, using the Macy's account of ES without her authority. ES has been the victim of a pickpocket and her Macy's card was used during the transaction. The other receipt was from an exchange of $6,624.58 of merchandise at the Macy's in King of Prussia, Pennsylvania. The items exchanged had been fraudulently purchased using the Macy's account of KS, whose account was used to purchase over $14,000 of merchandise from Macy's stores in New Jersey and Florida on December 15, 2012. Also located in the vehicle was hand written document containing the P.I.I. of various individuals.

25. Although Macy's does not require that individuals making returns provide any identifying information, some of the documents relating to the returns include the name given by the person making the return. On at least eight occasions (in addition to those described above), the individual making returns of the fraudulently purchased items gave the name James Cole or James Cole, III (or was later identified as the same person who had previously made a return under the name James Cole). These transactions accounted for at least $26,640 worth of merchandise at no less than five different Macy's stores between July 11, 2012 and November 17, 2012. All of the returns were for store credit on Macy's gift cards.

## PRIOR CONVICTIONS OF YVONNE GAIL WELCH

26. On March of 1998, **WELCH** was convicted of two counts of Access Device Fraud in Pennsylvania.

27. In December of 1997, **WELCH** was convicted of Forgery in Pennsylvania.

## CONCLUSION

28. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that Yvonne Gail **WELCH**, date of birth \*\*/\*\*/1974, committed violations of Title 18, United States Code, § 1349 (Conspiracy to Commit Bank Fraud); and Title 18, United States Code, § 1028A (Aggravated Identity Theft).

Respectfully submitted,

Michael Keller
Special Agent
United States Secret Service

Subscribed and sworn to before me on August 28th, 2013.

The Honorable Timothy J. Sullivan
UNITED STATES MAGISTRATE JUDGE